FILED CLERK
U.S. DISTRICT COURT
2006 NOV 27 PM 4:00
TEXAS EASTERN
BY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MARCELLUS HAYNES, *Plaintiff*, | § § § § | |
| v. | § § | C.A. NO. 2:06cv492 |
| LONGVIEW INDEPENDENT SCHOOL DISTRICT and MICHAEL McFARLAND, *Defendants*. | § § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff MARCELLUS HAYNES asks the Court to enter judgment against Longview Independent School District and Michael McFarland.

### I. PARTIES

1. Plaintiff, Marcellus Haynes ("Haynes"), is an individual who is a citizen of the State of Texas, residing in Longview, Gregg County, Texas.

2. Defendant, Longview Independent School District ("LISD"), is a Texas independent school district situated in Gregg County, Texas, and may be served with process by serving the Superintendent at 1301 East Young St., Longview, Gregg County, Texas 75602.

3. Defendant, Michael McFarland ("McFarland"), is an individual who is a citizen of the State of Texas and may be served with process at 11388 Lamb Drive, Tyler, Smith County, Texas 75709.

### II. JURISDICTION

4. The Court has jurisdiction over this lawsuit under 20 U.S.C. § 1681, as well as 42 U.S.C. § 1983, specifically the Fourteenth Amendment to the United States Constitution,

because the actions alleged herein are based on the sexual assault of Haynes by Sebrina Clark ("Clark") -- an LISD teacher's aide at Foster Middle School ("Foster") in Longview, Gregg County, Texas -- while Haynes was a student at Longview High School ("Longview High") in Longview, Gregg County, Texas.

### III. CONDITIONS PRECEDENT

5. All conditions precedent have been performed, have occurred, or have been excused or waived.

### IV. FACTS

6. Haynes first encountered Clark during the 2001/2002 school year while Haynes was an 8th grade student at Foster. Although Haynes was never a student in any of the classes in which Clark served as a teacher's aide, Clark was considered one of the more popular personnel at Foster and befriended many students, including Haynes.

7. During the 2002/2003 school year, Haynes was a freshman at Longview High and began playing sports for the high school team. His interaction with Clark was primarily based on Clark's regular attendance at and participation in Longview High athletic events. At all or some such events, Clark would help keep score and/or maintain records. During this time period, Haynes and Clark remained friendly, with some flirtatious gestures occurring from Clark towards Haynes.

8. Clark's flirtatious relationship with Haynes changed drastically during the 2003/2004 school year. On or about September 9, 2003, Clark – then twenty-six – drove Haynes to a football game in Louisiana for his sixteenth birthday. On the way back, Clark stopped at an area outside the Gregg County airport and had sex with Haynes, then still a virgin.

9. Clark continued to have sex with Haynes throughout the fall semester. Although sexual intercourse took place outside of regular school hours and off school campus – either in a vehicle, at Haynes' father's house, or at a nearby motel – unlawful sexual touching of the breasts and genital areas took place on the Longview High campus.

10. In addition, Clark's regular attendance at Longview High athletic events, some of which she would help keep score and/or maintain records, often served as the "meeting point" for which sexual intercourse would later take place. Clark attended Haynes' games that were played at Longview High, and when games were played away from Longview High, Clark would often pick Haynes up from the Longview High campus upon the return of the team's school bus.

11. Despite efforts to keep the sexual relationship a secret, rumors spread rampantly throughout Foster and Longview High shortly after the sexual relationship began. In fact, rumors were so widespread that Haynes was often approached by students at Longview High with whom Haynes had no prior connection to discuss the truth of the rumors. However, with the exception of two Longview High coaches, Greg Colbert and Curtis Jones, no personnel at Longview High ever approached Haynes to discuss the "alleged" relationship.

12. On the other hand, upon information and belief, Foster personnel, including then-principal Michael McFarland ("McFarland"), had knowledge of Clark's sexual relationship with Haynes. Sometime in the fall semester, Charlotte Reese ("Reese") – a friend of Clark's and fellow LISD employee at Foster – approached McFarland with information involving the sexual relationship.

13. Shortly thereafter, McFarland called Clark into his office on at least one occasion to discuss the relationship, including the information Reese provided him. Clark denied the existence of a relationship, and McFarland warned Clark of the consequences if a relationship did, in fact, exist.

14. However, McFarland never discussed the matter with Haynes or notified Haynes' parents of the allegations. Assuming McFarland lacked actual knowledge of Haynes' identity as the victim of the on-going sexual assault, upon information and belief, McFarland never pursued the reasonable and necessary steps to uncover his identity. Moreover, if in fact LISD had sexual harassment policies in place during this time period, McFarland's inactions ran contrary to the policies set forth by LISD itself to handle such matters as McFarland, upon information and belief, never referred or discussed the matter with the LISD Superintendent, the Title IX coordinator, any member of the LISD board of trustees, or any other LISD personnel or student with possible knowledge of the sexual relationship. Finally, upon information and belief, McFarland never pursued the reasonable and necessary steps to set boundaries for Clark, including, but not limited to, elimination of contact between Clark and Haynes, closer supervision of Clark, or communication of the allegations to the teacher(s) for whom Clark assisted as a teacher's aide. As a result of LISD and McFarland's failure to take action, Clark's sexual relationship with Haynes that began in the fall semester continued into the subsequent spring semester.

15. In June 2004, Haynes' mother discovered the sexual relationship and immediately contacted the police to file sexual assault charges against Clark. Haynes provided the police with a statement, who then had Clark come into the police station to answer

questions and give her statement. Clark admitted to sexually assaulting Haynes as outlined in Haynes' statement, but the police did not arrest her at that time.

16. Sometime shortly thereafter in summer 2004, upon information and belief, Clark was called before the LISD Superintendent, and Clark either was fired or resigned. However, despite the filed charges against Clark and Clark's subsequent confession, Clark still continued to engage in a sexual relationship with Haynes.

17. Despite the fact that Clark did not return to Foster for the 2004/2005 school year, Clark still continued to attend Haynes' Longview High athletic events and engage in a sexual relationship with Haynes during the fall semester. LISD took no action to assure Haynes' safety from Clark.

18. On or about December 9, 2004, Clark was indicted for the sexual assault of Haynes, and approximately three weeks later, Clark's sexual relationship with Haynes ended.

19. Despite the charges against Clark, Clark's subsequent confession, and Clark's indictment, upon information and belief, Clark still attended Haynes' Longview High athletic events during the subsequent spring semester and in the fall semester of the 2005/2006 school year. LISD took no action to assure Haynes' safety from Clark.

20. On or about January 31, 2006, Clark was finally arrested for the sexual assault of Haynes. On or about June 27, 2006, Clark pled guilty to the sexual assault of Haynes and was sentenced to ten years probation (with sex offender registration and other public service requirements).

21. At the height of the sexual relationship during the 2003/2004 school year, Haynes was negatively affected in a substantial manner. Prior to the sexual relationship, Haynes

was an above-average student. After the sexual relationship began, Haynes' grades dropped sharply, and he failed a class for the first time. Haynes became more withdrawn and isolated from his family, teammates, and coaches and had difficulties in other interpersonal relationships. He experienced a sharp decline in his athletic performance, and he was constantly tired from the stress of the relationship.

22. After the sexual relationship ended, Haynes' grades improved, and he was able to enter into normal relationships with women again. Moreover, Haynes recently graduated from Longview High and received a scholarship to play basketball for a small college in Texas.

## V. CAUSES OF ACTION

### A. 20 U.S.C. § 1681

23. Haynes incorporates paragraphs 6 through 22 as if set forth fully herein.

24. Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., provides that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 638 (1999).

25. Sexual harassment is a form of discrimination for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., and Title IX proscribes harassment with sufficient clarity to serve as a basis for a damages action. *Id.* at 649-650. Moreover, an implied private right of action exists under Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., and money damages are available in such suits. *Id.* at 639.

26. Thus, a recipient of federal education funds may be liable in damages under Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., where an official of the school district, who at a minimum has authority to institute corrective measures on the district's behalf, has actual notice of, and is deliberately indifferent to, the district employee's severe, pervasive, and objectively offensive sexual harassment. *Id.* at 650; *Gebser v. Lago Vista ISD*, 524 U.S. 274, 284 (1998), *affirming Doe v. Lago Vista ISD* (5th Cir. 1997).

27. Upon information and belief, LISD is a recipient of federal education funding.

28. McFarland, as principal of Foster, was an appropriate official of the school district, who at a minimum had authority to institute corrective measures on LISD's behalf. *See Doe ex rel. Doe v. Dallas ISD*, 220 F.3d 380, 385 (5th Cir. 2000), *on appeal after remand* (Title IX issue) 153 F.3d 211 (5th Cir. 1998); *see also Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 362 (3d Cir. 2005) (finding that a school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be an appropriate person under Title IX); *Rosa H. v. San Elizario ISD*, 106 F.3d 648, 650 (5th Cir. 1997) (holding that an appropriate person under Title IX is an employee who has been invested by the school board with supervisory power over the offending employee).

29. McFarland had actual notice of Clark's sexual harassment of Haynes, and given the particular facts of this case, his inactions amounted to deliberate indifference.

30. Finally, Clark's sexual harassment of Haynes was so severe, pervasive, and objectively offensive that Haynes was deprived of access to the educational opportunities or benefits provided by school.

**B. 42 U.S.C. § 1983/Fourteenth Amendment to the United States Constitution**

31. Haynes incorporates paragraphs 6 through 30 as though set forth fully herein.

32. 42 USC § 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. The statute states,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Doe ex rel. Doe v. Dallas ISD*, 153 F.3d 211, 215 (5th Cir. 1998).

33. In order to state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law. *Id.*

34. The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive a person of life, liberty or property without due process of law. *See Doe v. Taylor ISD*, 15 F.3d 443, 450 (5th Cir. 1994). The substantive component of the Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them. *Id.* Thus, the right to be free of state-occasioned damage to a person's bodily integrity is protected by the Fourteenth Amendment guarantee of substantive due process. *Id.* at 450-451. For example, schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and upon the premise that physical sexual abuse by a school employee violates that right. *Id.*

35. The Equal Protection Clause of the Fourteenth Amendment requires similar treatment of all persons similarly situated, and a party who wishes to make out an equal protection claim must prove the existence of purposeful discrimination motivating the alleged state action. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439(1985); *Washington v. Davis*, 426 U.S. 229, 246-250 (1976); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).

### *I. Michael McFarland*

36. A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that:

   a. The official learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student;

   b. The official demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

   c. Such failure caused a constitutional injury to the student.

*See Doe v. Taylor ISD*, 15 F.3d at 454.

37. Clark's sexual harassment of Haynes was conducted under color of state law. However, despite McFarland's actual knowledge of the abuse, he failed to take action that was obviously necessary to prevent or stop the abuse and amounted to deliberate indifference toward Haynes' constitutional rights. McFarland's inactions caused injury to Haynes' constitutional right to bodily integrity protected by the Fourteenth Amendment guarantee of substantive due process.

38. Moreover, McFarland's own acts or omissions were conducted under color of state law. Upon information and belief, a motivating factor for McFarland's failure to protect Haynes' constitutional rights was based on the fact that Haynes was a male victim of sexual assault, and had Haynes been female, McFarland would not have acted with deliberate indifference in stopping or preventing the abuse. Thus, McFarland's inactions caused injury to Haynes' constitutional right protected by the Fourteenth Amendment guarantee of equal protection to receive similar treatment of all persons similarly treated.

## *II. Longview Independent School District*

39. A municipality may be held liable under § 1983 when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. *Doe ex rel. Doe v. Dallas ISD*, 153 F.3d at 215. Texas law is clear that final policymaking authority in an independent school district rests with the district's board of trustees. *Id.* at 216. Thus, § 1983 municipal liability may be imposed upon LISD when (1) the enforcement of its policy or custom was (2) "the moving force" of the violation of federally protected rights. *Id.*

40. A school district's failure to adopt an official policy may serve as the basis for § 1983 liability when the omission amounts to deliberate indifference – that is, when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. *Id.* at 217. Upon information and belief, LISD did not have an official or adequate sexual harassment policy in place, including, but not limited to, a policy for the protection of students, at the time Clark began to sexually abuse Haynes in the fall of 2003, and such an omission was done intentionally, despite the likely

consequences that Haynes' Fourteenth Amendment substantive due process rights would not be protected under such circumstances.

41. A municipality may also be responsible in certain circumstances under § 1983 for a failure to train its employees that results in the violation of the Due Process Clause of the Fourteenth Amendment upon on a showing that (1) a "deliberately indifferent" policy of training that (2) was the "closely related" cause of the violation of the plaintiff's federally protected rights. *Doe v. Taylor ISD*, 15 F.3d at 453 (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 381 (1989)). Upon information and belief, at the time Clark began to sexually abuse Haynes in the fall of 2003, LISD failed to properly train its personnel in how to recognize and/or deal with instances or alleged instances of sexual harassment in its schools, and despite the obvious need for such training to prevent the type of repeated sexual abuse Haynes sustained, LISD's failure was the closely related cause of the violations of Haynes' Fourteenth Amendment substantive due process rights.

42. In addition to a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority, § 1983 municipal liability may be based on a persistent, widespread practice of government officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

43. Under such liability, actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body

had delegated policy-making authority. *Id.* Upon information and belief, at the time Clark began to sexually abuse Haynes in the fall of 2003, there existed a persistent and widespread practice throughout LISD known to the LISD superintendent and/or the LISD board of trustees that afforded less protection to male victims of sexual harassment or claims made by males regarding sexual harassment than female victims of sexual harassment or claims made by females regarding sexual harassment. Such an informal policy, custom, or practice was motivated by discrimination against men in violation of Haynes' equal protection rights under the Fourteenth Amendment.

44. Finally, for purposes of establishing the liability of a governmental entity, a third type of "policy" stems from a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations. *Paz v. Weir*, 137 F. Supp. 2d 782, 798 (S.D. Tex. 2001) (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). A single decision by a policy maker may, under certain circumstances, constitute a policy for which the governmental entity may be liable. *Brown*, 219 F.3d at 462. Under this type of "policy," a municipality can be liable only if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers. *Id.*

45. Upon information and belief, had the LISD superintendent and/or the LISD board of trustees known of Clark's sexual harassment of Haynes that began in the fall of 2003 or were made aware of similar allegations, the LISD superintendent and/or the LISD board of trustees made a decision to adopt a particular course of action that afforded less protection to Haynes as a male victim of sexual harassment. Such a decision was

motivated by discrimination against men in violation of Haynes' equal protection rights under the Fourteenth Amendment.

## VI. DAMAGES

46. As a direct and proximate result of Defendants' conduct, Haynes has suffered pain and mental anguish in the past and will continue to suffer such pain and anguish in the future. In addition, Haynes has incurred medical expenses in the past and will continue to incur such expenses in the future.

## VII. ATTORNEY FEES

47. Haynes is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988.

## VIII. DEMAND FOR JURY TRIAL

48. Haynes asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX. PRAYER

49. For these reasons, Haynes asks for judgment against Defendants for the following:

    a.    Actual damages.
    b.    Prejudgment and postjudgment interest.
    c.    Reasonable and necessary attorney fees.
    d.    Costs of suit.
    e.    All other relief the court deems appropriate.

Respectfully submitted,

CHRISTIAN, SMITH & JEWELL

By: _____
Sean Greenwood
State Bar No. 08408730

2302 Fannin, Suite 500
Houston, Texas 77002
713/659-7617
FAX 713/659-7641
E-MAIL sg@csj-law.com

**LOCAL COUNSEL**

**WILLIAM S. HOMMEL, JR., P.C.**
William S. Hommel
State Bar No. 09934250
3304 S. Broadway, Suite 100
Tyler, Texas 75701
903/596-7100
FAX 9033/596-7464
E-MAIL
bhommel@hommelfirm.com

**ATTORNEYS FOR PLAINTIFF
MARCELLUS HAYNES**

Z:\CSJ-LAW\USERDATA\SG\Client Files\Bormaster\8327.005-Haynes\Pleadings\ORIGINAL COMPLAINT.doc